IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGELA MIRANDA-FERNANDEZ, et al.,

Plaintiffs,

v.

GRUPO MEDICO SAN PABLO, et al.,

Defendants.

CIVIL NO. 09-1966 (CVR)

## OPINION AND ORDER

## INTRODUCTION

Plaintiff Angela Miranda-Fernández (hereafter "plaintiff Miranda-Fernández") filed a Second Amended Complaint against defendants under the American with Disabilities Act (hereafter "ADA") and the Rehabilitation Act, as well as pendent state claims. 42 U.S.C.A. §§12101 *et seq.*; 29 U.S.C. §701, *et seq.*[1] (Docket No. 72). Plaintiff Miranda-Fernández claims the actions of defendants Grupo Médico San Pablo (hereafter "GMSP") and San Pablo Physician Group, her employer, and co-defendants Dr. Ilia Zayas (hereafter "Dr. Zayas") and Dr. Ismael Toro-Grajales (hereafter "Dr. Toro-Grajales"), as business owners of said employer and recipients of federal funds, violated federal and state employment anti-discrimination prohibitions for her disability because of a brain condition diagnosed as left parietal arteriovenous malformation, known as "AVM."[2]

[1]  Supplemental claims were filed under Puerto Rico Law No. 44 of July 2, 1985, P.R. Laws Ann. Tit. 1, §501 and civil tort laws under Articles 1802, 1803 of P.R. Civil Code.

[2]  Other co-defendants were also initially sued in their personal capacity, to wit: Carmen Rivera, a supervisor, and her husband and legal conjugal partnership, unknown insurance companies XYZ and ABC, San Pablo Physicians Group, a co-employer, Vania Medina, Administrator at co-employer, her husband and conjugal partnership, María Correa, an Office Supervisor, her husband Doel Correa and their conjugal partnership. The Opinion and Order issued on February 12, 2012 dismissed claims under ADA, Rehabilitation Act, Law No. 44 and Law 80 as to these individual co-defendants, to wit, Correa, Carmen Rivera, Dania Medina, their husbands and conjugal partnerships, Dr. Zayas, Dr. Toro-Grajales and their conjugal partnership. (Docket No. 98). Other supplemental claims survived as to all the defendants, mostly Art. 1802 and 1803.

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 2

Plaintiff Miranda-Fernández filed a Motion for Partial Summary Judgment (Docket No. 112) in which she submits there is no controversy of facts as to defendants violating the ADA provisions for not engaging in the interactive process to determine whether they could provide reasonable accommodation. Defendants also regarded plaintiff as substantially limited in her ability to work due to her medical condition. Defendants presumed, without any evidence, that plaintiff Miranda-Fernández could not engage in multitasking jobs without posing a threat to the health and safety of the patients and said decision was based on an incorrect and illegal perception of her medical condition. Thus, defendants violated the ADA provisions and the Court should also conclude that defendants regarded plaintiff Miranda-Fernández as disabled.

Defendants GMSP and San Pablo Physician Group opposed plaintiff Miranda-Fernández' partial summary judgment motion. (Docket No. 130). Defendants argue plaintiff worked as a nurse assistant assigned to the PAP Smear Clinic when on December 18, 2008 her physician Dr. Ignacio Pita (hereafter "Dr. Pita") sent two letters to the supervisor. One of the letters certified Miranda-Fernández was diagnosed with left parietal arteriovenous malformation and took medication to avoid convulsions resulting in problems in concentration. In summary, the letter indicated that, because of her condition, plaintiff Miranda-Fernández needed reasonable accommodation, if possible, a four (4) day work week. The second letter indicated plaintiff Miranda-Fernández had problems with multitasking, shifting from one task to another. As reasonable accommodation it was recommended that she could perform one or two specific tasks during a shift for, if the tasks were limited, she could perform better and minimize mistakes. A parking space was also

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 3

requested.  Defendants submit they granted the two requests by reducing the work-week immediately to four days and providing plaintiff with a parking space.  Defendants made a request to plaintiff's attending physician in regards with the duties and responsibilities of plaintiff Miranda-Fernández at the PAP Clinic to indicate if these could be performed in light of the second letter by Dr. Pita but no answer was received.

Defendants consider also that plaintiff Miranda-Fernández was taking medication to deal with sleeplessness and she had already failed to comply with one of the duties of notifying a positive PAP smear result during January of 2009.  To comply with the two letters received and to further guaranty the safety of the patients at the clinic, defendants considered the position to be assigned where plaintiff could perform the most basic duties an assistant nurse performed was taking vital signs at the Adult Outpatient Clinic.  As such, defendants transferred plaintiff Miranda-Fernández.  Defendants submit there were no other positions available which could meet plaintiff's physician requirements and/or which did not require multitasking.  According to defendants, by April 22, 2009, plaintiff Miranda-Fernández abandoned her position and did not return upon stating no one was assigned to help to take vitals.  Four days later, she claimed for Social Security benefits and these were eventually granted because of complaints due to loss of ability to concentrate, difficulty focusing on one thing, nervousness, crying spells, bad humor, feelings of frustration and worthlessness and claims of productivity at work until 2006.

On the above grounds, defendants in turn filed a summary judgment request in which it is stated that plaintiff Miranda-Fernández could not establish a *prima facie* case of disability discrimination for they initially complied with reasonable accommodation as

requested; not all accommodation could be complied as to multitasking in the previous position for all the functions were performed by only one person at the PAP Clinic; and plaintiff's condition was a direct threat to the medical safety of the patients since mistakes would only be minimized since plaintiff's stated problems with multitasking and in shifting from one task to another.  Defendants further submit they provided the accommodation that was possible, not the accommodation of a particular choice, more so considering the limitations attested by plaintiff in obtaining her Social Security disability benefits. Defendants further aver plaintiff Miranda-Hernández was not subject to retaliation and/or hostile work environment.  As such, above motion requests from the Court to enter summary judgment for defendants.  (Docket No. 113).

Plaintiff Miranda-Fernández' opposition to defendants' Motion for Summary Judgment states she was diagnosed with left parietal arteriovenous malformation "AVM" during the time she worked for the employer and she was still able to meet the duties of her position as a nurse.  Thus, she is a qualified individual with a medical condition who can perform the essential functions of her job.  (Docket No. 127).   Plaintiff considers the employers' actions were unjust, discriminatory, arbitrary and capricious, and a retaliation for her request for reasonable accommodation.  Plaintiff Miranda-Fernández claims that it is defendants who have failed to meet the burden of showing the adverse employment actions were not discriminatory; that the accommodations requested were not reasonable; and they did not create a hostile work environment or retaliate against plaintiff.  Plaintiff Miranda-Fernández addresses the failure to accommodate not only at the initial requests presented by Dr. Pita, but also in defendants not addressing her claim after she was

unilaterally transferred to vital signs and that such transfer was made in retaliation for her initial request for accommodation.

The present case presents cross-motions for summary adjudication, one by plaintiff and another by defendants GMSP and San Pablo Physician Group.  We entertain both requests in this Opinion and Order.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Pursuant to the language of the applicable rule, as amended in 2010, the moving party bears the two-fold burden of showing that there is "no genuinely disputed" factual predicate.  Said party may also show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).  After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id*. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id*.

At all times during consideration of a motion for summary judgment, Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

The moving party's uncontested facts and other evidentiary facts of record on an uncontested motion for summary judgment must still show that said party would be entitled to summary judgment. *See* Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003).

On cross-motions for summary judgment it is settled law that each cross-motion for summary judgment must be decided on its own merits and when these are filed simultaneously, a district court ordinarily should consider the two motions at the same time. Puerto Rico American Ins. Co. v. Rivera-Vázquez, 603 F.3d 125 (1st Cir. 2010) (*citing* to Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996)). It is considered proper to proceed as such and ruled on both motions for summary judgment avoiding duplicity as to uncontested facts and applicable legal provisions.

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 7

**PROPOSED UNCONTESTED FACTS**

**I.   Defendants' Motion for Summary Judgment.**

**A.  Defendants' Uncontested Facts.**

Plaintiff Miranda-Fernández began working for defendant on October 2000 as a nurse assistant and started in 2001 at the PAP Smear Clinic where she worked alone and with minimum supervision, doing functions of a nurse and doctor which were very complex. (Docket No. 113-1, Deft's Uncontested ¶¶1-3, Exhibit 24, Dr. Zayas' depo., p. 54; Exhibit 25, Miranda-Fernández' depo.).   Miranda-Fernández began work in 2003 in the Family Planning Clinic where from the years 2003-2008 she devoted half her time at the PAP Clinic and the other half in Family Planning Clinic.   (*Id.*, ¶6; Exhibit 25A, Miranda-Fernández' depo., p. 90).   On July 2008, the Family Planning Clinic was closed and plaintiff worked at the PAP Clinic half the time and the rest at other departments as needed. (*Id.* ¶12, Exhibit 24, p. 69).

In the year 2006, Miranda-Fernández was diagnosed with cerebral arteriovenous malformation "AVM" upon complaints of headaches and spasms.  On September 2007, she was diagnosed with major depressive disorder recurrent.  (*Id.*, ¶¶ 7-8; Exhibits 24, 26).

Plaintiff Miranda-Fernández' neurologist, Dr. Rafael Rodríguez (hereafter "Dr. Rodríguez"), recommended during the year 2008 a Gamma Knife procedure that was not performed in Puerto Rico and the health insurance did not cover.  Dr. Zayas and Dr. Toro-Grajales made a cash gift to plaintiff to cover expenses of her trip to the United States,[3]

---

[3]   Dr. Zayas gave plaintiff $1,000.00.  (Docket No. 113-27, Exhibit 25B, p. 84). Ms. Carmen Rivera also gave her money and visited her daily when plaintiff was taking care of her daughter who had a spinal cord condition.  (*Id.*, pp. 85-86).

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 8

authorized she be included in the health insurance plan which covered said procedure at the CDT, and authorized receipt of wages and benefits during the procedure and recovery although plaintiff no longer had credit for sick days and other leave of absences. (Docket No. 113-1, ¶13-14; Exhibit 24). Plaintiff Miranda-Fernández returned to work by March 2008 with the same functions, wages and other employment conditions. (*Id*., ¶15).

By December 18, 2008, plaintiff delivered two letters, one from physician Dr. Pita and the other from Dr. Rodríguez. Dr. Rodríguez' letter requested plaintiff to be granted reasonable accommodation consisting of a reduced work week. (*Id*., ¶¶16-17). Dr. Pita's letter stated plaintiff Miranda-Fernández was having "problems multitasking and shifting from one task to another." He recommended reasonable accommodation in which she could perform one or two specific tasks during her shift for if tasks were limited, she would be able to perform them better and minimize mistakes. (*Id*., ¶18; Exhibit 4, Dr. Pita's letter 9-4-2008).[4]

On January 13, 2009, defendants sent a letter to Dr. Pita detailing plaintiff's work duties at the PAP Clinic and requesting that, since she worked with patient, to clarify if she could still perform her job at the PAP Clinic. (*Id*., ¶19). Plaintiff's request to be assigned a handicapped parking was granted within two to three days. (*Id*., ¶20).

---

[4] Dr. Pita, neurology-epilepsy-neurophysiology, redacted a letter dated September 4, 2008 indicating plaintiff was his patient since December 8, 2007 due to seizures secondary to AVM resection and had several interventions to correct same, the most recent was Gamma knife in March 2008. As residual of her condition, she remained with problems multitasking and shifting from one task to another. Due to the limitations, there was a recommendation for reasonable accommodation in which she could perform one or two specific tasks during her shift. If task were limited, she would be able to perform them better and minimize mistakes. (Docket No. 113-1, Exhibit 4).

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 9

Defendants submit plaintiff Miranda-Fernández used to cry constantly and while on vacation by February 2009 Dr. Zayas became aware PAP test results had not been notified in January 2009.  (*Id.*, ¶22).  At the end of February 2009, plaintiff informed that her problems with attendance and/or tardiness were because she was having trouble sleeping and was taking medication.  (*Id.*, ¶24).

Dr. Zayas, based on Dr. Pita's letter referring that "in order to minimize mistakes" and information as to plaintiff taking medication, became concerned over patients' safety and decided to assign her to the simplest job available, at the vital signs Adult Clinic, which was considered the only available alternative.  (Docket No. 113-1, ¶¶26, 27; Exhibit 24, Dr. Zayas' depo.).

According to defendants, the expert opinion of Dr. Glen J. Garayalde (hereafter "Dr. Garayalde") in the deposition of September 7, 2012, was to the effect that without frequent rest, vacations after long intense work, somebody helping plaintiff, reducing complex projects and simplifying plaintiff's functions patients at the PAP Clinic would be put at risk. (*Id.*, ¶Exhibit 26, pp. 61-62).

During the first week of March 2009, plaintiff was notified she was being assigned to the vital signs area and a doctor was then assigned to handle the PAP Clinic.  Plaintiff met with Dr. Zayas and Medina to discuss other alternatives but all other positions were filled and other jobs were considered more complex, there being no other option available to accommodate plaintiff.  (*Id.*, ¶¶31-32).

On April 3, 2009, Miranda-Fernández filed a charge of discrimination with the EEOC.  (*Id.*, ¶35; Exhibit 12).  On April 22, 2009 was the last day plaintiff worked for

defendants having reported to the State Insurance Fund (hereafter "SIF") and requesting the employer to fill out the Fund's report.  Plaintiff did not return to work, applying for Social Security disability benefits on April 27, 2009.  (*Id.*, ¶40, Exhibits 14, 15).  After a hearing on June 11, 2010, the Social Security ruled plaintiff was totally disabled as of April 22, 2009.  (*Id.*, ¶47).[5]

## B.  Plaintiff's Opposition.[6]

### I.  ADA and Rehabilitation Act Disability Discrimination.

Plaintiff Miranda-Fernández submits that, although defendants claim plaintiff was not qualified because of her disability to continue  her position at the PAP Clinic, there is no indication of the functions of the position that were essential nor which ones plaintiff was considered unable to perform.  (Docket No. 127).  To the contrary, defendants aver the PAP Clinic required multitasking and plaintiff Miranda-Fernández was the only one there to perform all the duties at such clinic.  Defendants now submit that plaintiff failed once to notify a patient of a positive PAP test on January of 2009.  She was transferred to the vital signs position on March of 2009, which defendants considered reasonable accommodation as requested by her physician Dr. Pita in the letter addressed to plaintiff's supervisor.

---

[5]  Defendants also submit details of the administrative process and findings with the Social Security.  Upon reference and consideration, these events are considered irrelevant as not being available to defendants at the time of the adverse employment action nor reflect any finding that deserves judicial consideration while plaintiff was performing her work with defendants.

[6]  Defendants' motion to file and extension of time for a reply was originally denied for there is no right to be granted such leave. (Docket Nos. 135, 136).  Thereafter, defendants sought reconsideration, which was noted. Still, defendant's Exhibits A, deposition testimony of Dr. Zayas pp. 49-54, attached to its reply as to opposing statement ¶1, was submitted in the Spanish language without the necessary translation and no request to file the necessary translation. (Docket No. 137, Exhibit 1A).  The Court, however, entered an order and granted plaintiff a sort time to file a sur-reply, if deemed necessary, in the event defendant would timely comply with proper filing.  (Docket No. 138).  A sur-reply was then filed.  (Docket No. 144).

Plaintiff states to the contrary, that is, that the transfer to vital signs was on account of retaliation for her request of reasonable accommodation as defendants never addressed what duties in the position at the PAP Clinic she could not perform nor defendants attempt to conduct the required interactive process prior to the transfer. Additionally, after such transfer, plaintiff was not provided with reasonable alternatives to the request to work at another position, phlebotomy, under pretext there was no other position available when in fact someone was recruited within the same time frame. The above submissions raise genuine issues of material fact in controversy which prevent the granting of summary judgment.

Although plaintiff considers she was the ideal person to inform the employer what the accommodation requested entailed and as to the functions she could and could not do, defendants did attempt to obtain further statement from Dr. Pita for their letter was left unanswered. Defendants claim that reasonable accommodation is not the one an individual wants or request, but one that is reasonable under a more objective standard.

Notwithstanding, although plaintiff Miranda-Fernández was diagnosed with AVM condition since 2006, she continued to perform her tasks. It was by September of 2008 that Dr. Pita addressed the letters insofar as a need for accommodation. Plaintiff objects that defendants could consider that continuing to perform her tasks at the PAP Clinic would have endangered the patients since defendants did not make any individualized assessment of plaintiff's ability to safely perform the essential functions of her job. Rather, defendants' act to transfer plaintiff was based on subjective perception, irrational fears, patronizing attitudes and stereotypes, precisely what disability anti-discrimination provisions gear to

address.  Such being the case, defendants' rationalization that plaintiff could be placing patients at risk should not be considered reasonable but rather as pretext for the discrimination and a *post-hoc* justification.   These contention and the supporting documentation, also raise genuine issues of material fact in controversy mostly dealing with intent.

Plaintiff Miranda-Fernández objects to consideration of any statement as to her conditions and impairments she may have provided to the Social Security when applying for disability benefits for these do not reflect her work capacities at the time of the employment decision.[7]  Plaintiff acknowledges the administrative determination that she could not perform her job as a nurse dated back to April 22, 2009, a short span between the claimed adverse employment action as to the transfer to the vital signs position on March of 2009.   However, a pursuit of disability benefits does not automatically hinders the recipient from pursuing an ADA claim.[8]

Plaintiff objects to the transfer made by defendants to the vital signs clinic not as reasonable accommodation as alleged but rather as retaliation for her request for reasonable accommodation within three months after speaking with the employer Dr. Zayas. Defendants attempt to justify the alleged transfer as a reorganization as stated when notifying plaintiff of such transfer.  These different versions for the employment decision

---

[7]  From defendant's documents in support of summary judgment the Social Security Administration granted a favorable disability determination in June 11, 2010, finding disability as of April 22, 2009. (Docket No. 113-24).

[8]  Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 119 S.Ct. 1597 (1999) (receipt of Social Security benefits does not create any presumption with respect to a parallel ADA claim); see De Caro v. Hasbro, Inc., 580 F.3d 55 (1st Cir. 2009) (discussing the proper jury instructions in this type of cases).

<u>Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.</u>
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 13

should be considered suspicious.  Additionally, after the transfer to vital signs, plaintiff Miranda-Fernández requested to be reasonably accommodated to the area of phlebotomy, a position defendants submit was occupied by only one nurse.  However, the evidence shows allegations the position was occupied by two nurses, including one recruited approximately during the time plaintiff Miranda-Fernández also requested same.

Furthermore, plaintiff addresses the employer's total  failure to engage in a good faith interactive process as to the accommodation requested and it should be for the jury, as trier of facts, to determine whether the transfer was or not in compliance with the physician's request for plaintiff and whether the transfer made by defendants was retaliatory. Plaintiff avers the information defendants now rely on to support her accommodation request was not reasonable nor was available to defendants at the time the adverse employment action was undertaken.  Reference to the reports of Dr. Margarida and the review made by Dr. Garayalde were not available to defendants until after their deposition testimonies were taken in preparation for litigation in this case and defendants' *post hoc* rationalizations may instead be assessed as ill motivation and, thus, pretextual.[9]

In view of the above, plaintiff claims there are genuine contested issues of fact as to the disability discrimination and the reasonable accommodation provided.

---

[9]    Defendants' Exhibit 26 (Docket No. 113-28)  is the deposition testimony of Dr. Garayalde, a general neurologist, held on September 7, 2012.  Dr. Garayalde was an independent medical examiner and associate professor of neurology in the P.R. School of Medicine.  Dr. Garayalde examined plaintiff Miranda-Fernández' medical record and rendered a medical expert report.  A review of defendants' proposed exhibit in support of summary judgment provides the expert's opinion also stated that had plaintiff been given the accommodation recommended by Dr. Margarida, even with her cognitive problems, plaintiff could have continued to perform in the PAP Clinic.  (*Id.*, pp. 60-61).

### ii. Hostile Work Environment.

Defendants raise in their summary judgment there was no hostile work environment and no retaliation ensued upon receipt of the two physicians' letters of plaintiff Miranda-Fernández. Defendants discuss the hostile acts referred by plaintiff insofar to the transfer to the vital signs were limited, as were the offensive and derogatory comments from co-workers and superiors and general comments about plaintiff's mental condition. As per plaintiff's deposition, defendants submit Miranda-Fernández complained about: being frowned upon, answered to in inadequate manner, subjected to ridicule for crying spells, receiving threatening calls, having her coming and goings scrutinized to corroborate her attendance record, being sent to the vital signs section, being given an uncomfortable desk, having to handle the effects of co-workers noise, not being helped by co-workers when she had panic attacks, and even getting locked inside an office by co-workers against her will. Without denying that these events transpired, defendants submit these should not to be considered so pervasive or severe to alter conditions of employment. (Docket No. 113-2, pp. 16-17).

Plaintiff Miranda-Fernández claims being object of constant ridicule about the impact of her impairment and her mental stability which caused her to cry constantly at work, get into discussions with co-workers and eventually having to withdraw from the workforce. Miranda-Fernández was told by co-workers and superiors  when she cried at work to keep her mouth shut up and stop making shows. Plaintiff indicated sometimes she was called "crazy"; was told that  it seems the gamma knife had not worked; and was even once locked inside an office by co-workers Jeannette Rivera and Ivonne Meléndez  and was

not allowed to leave.  Plaintiff also refers to Dr. Zayas making threatening calls; that when leaving out for lunch she fell afraid because they were paying attention to the time she left and return, what she would eat, whether she crossed the street or not, and could not leave for the bathroom at ease.  (Docket No. 113-27, Exhibit 25B, p. 63).  All kind of changes to work were made without considering how to perform the work.  Neither was it considered whether the area she was transferred was more at ease and plaintiff argues it was to the contrary, that it was were the most discomfort was present; she was assigned the highest desk that surpassed her waist line and given the cheapest weight balance that required her to also help in holding overweight patients.  At times, plaintiff perceived they were giving her the eye, including supervisors and top officers María, Vania Medina and Dr. Zayas; other  times they mocked her by imitating crying episodes.

Plaintiff's supervisor, Ms. Carmen Rivera, responded to plaintiff's request for accommodations with statements that she [plaintiff] knew she was "ADA", that she brought her a lot of problems, was tired of her and she should go to the SIF.  Ms. Rivera would not pay any attention to the request for accommodation but made instead offensive remarks about plaintiff's medical condition.  Ms. Vania Medina, an administrator, told plaintiff Miranda-Fernández that she was problematic, controversial and crazy.  Dr. Zayas responded to one of plaintiff's request for accommodation that plaintiff was crazy and she was tired of her request, that she knew plaintiff was looking to make a case of discrimination, that she was tired of her complaints and to get out of her office.  After repeated hostile remarks, plaintiff Miranda-Fernández went to the SIF and did not return to work.

In view of the above, plaintiff contends there are genuine issues of material fact in controversy as to the claim of hostile work environment.

### iii.  Dismissal as to San Pablo Physician Group.

Plaintiff Miranda-Fernández objects to the request for dismissal of co-defendant San Pablo Physician Group under the allegation that since October 1, 2000, plaintiff did not render services to said defendant and defendant did not participate in any decision as to plaintiff's employment.

It is plaintiff's averment that said co-defendant San Pablo Physician Group was also her employer, that she worked for both companies and they identified themselves as the employers through documents received by plaintiff Miranda-Fernández. Plaintiff indicated in her deposition testimony, and as submitted by defendant in support of summary judgment, she received payments from those two institutions through their separate bank accounts, sometimes from Santander Bank and others from Westernbank, at times from GMSP, others from the CDT.  (Docket No.  113-27, Exhibit 25A, p. 85).

As such, defendant San Pablo Physician Group and GMSP should fall under the single employer doctrine for even co-defendant Dr. Zayas' deposition testimony submits that all employees were merged under one single company since the year 2000.

In their summary judgment, defendants present there was an employment service contract stating that plaintiff Miranda-Fernández was working for San Pablo Medical Group from 2000 through 2001 and a sworn statement from Dr. Toro-Grajales that plaintiff Miranda-Fernández did not work for San Pablo Physician Group, Inc., since October 1, 2000.  (Docket Nos. 113-30, Exhibit 28; 113-31, Exhibit 29).

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 17

We note the single employer doctrine or alter ego is discussed below.

## II.  Plaintiff's Motion for Partial Summary Judgment.

### A.  Plaintiff Miranda-Fernández' Uncontested Facts.

Plaintiff Miranda-Fernández suffers from AVM.  Plaintiff should be regarded as an individual with disability under the ADA for the employer co-defendants GMSP and/or San Pablo Physician Group and/or CDT GMSP, consider her as an individual with such a disability or with one that substantially limits major life activities, such as one that limited her mental and emotional process in thinking and concentrating.  Plaintiff further avers the EEOC has defined AVM as a physical impairment that affects cognitive abilities, 29 C.F.R. §1630.2(h)(1),  and such activities are recognized as major life activities under its regulations.  Thus, it is undisputed that plaintiff Miranda-Fernández should be considered a qualified individual with disability within the parameters of the anti-discrimination provisions.  (Docket No. 112).

Dr. Zayas was the Executive Director of GMSP since 1998 until 2010 and responsible of supervising the GMSP's administrator.  GMSP had no Human Resources Department from 2006 through 2009 and Dr. Zayas made all employee-related decisions.  (Docket No. 112-1, Plaintiff's Uncontested ¶¶1-4).  Co-defendant Vania Medina was the Administrator at GMSP, which included supervising the PAP Clinic and the Family Planning Clinic.  (*Id.*, ¶8).

Plaintiff started work as a nurse with defendants in 2000 and in 2001 began at the PAP Clinic.  She received additional duties at the Family Planning Clinic in 2003 and frequently also worked at other clinics or divisions as needed.  Co-defendant Carmen Rivera

was plaintiff Miranda-Fernández' supervisor since 2006 and supervised all nurses.  (*Id.*, ¶¶9-11).

Dr. Zayas, Rivera and Medina knew that plaintiff Miranda-Fernández suffered from a neurological condition and received various invasive treatments to treat her condition, including two embolizations in October 2006 and February 2006 and Gamma-Knife radiosurgery in March 2008.  (*Id.*, ¶¶14-15).

Thus, plaintiff's partial summary judgment is that she is a qualified individual with disability and/or was perceived as one by the defendants.

Plaintiff also requests partial summary adjudication as to defendants' failure to engage in good faith with the individual and interactive process insofar as the reasonable accommodation and which resulted in the unilateral decision that plaintiff's disability did not allow multitasking jobs resulting a threat to the health and safety of patients.  Since December of 2008, plaintiff Miranda-Fernández requested her employer reasonable accommodation.  Plaintiff worked at the Family Planning until it closed and also, while at the PAP Clinic, she was assigned work at the Emergency Room, Pediatrics, Phlebotomy, Adults' Clinic and Geriatrics, and any work at the CDT clinics as needed.  Plaintiff performed adequately the duties of her position.  (Docket No. 112-1, ¶¶16-20; Exhibit 4, Carmen Rivera's depo.; Exhibit 3, Vania Medina's depo.; Exhibit 2, Dr. Zayas' depo.).

The employer had knowledge of two letters from plaintiff Miranda-Fernández' physicians requesting reasonable accommodation by December 2008. (*Id.*, Exhibits 4,3, and 2).  Defendants never requested plaintiff's authorization to contact any of her physicians.  (*Id.*; Exhibits 3 and 2).  Dr. Rafael Rodríguez stated in the letter dated

November 4, 2008 that plaintiff received an embolization procedure, was taking medications to avoid convulsions and had problems with concentration. He requested reasonable accommodation for her to work four days a week. (*Id.*, ¶¶21-23; Exhibit 5, Dr. Rodríguez' letter). On December 31, 2008, plaintiff's work hours were reduced to four days a week, eight hours per day. Co-defendant Medina attempted to contact Dr. Rodríguez but she never got in contact and never asked plaintiff for Dr. Rodríguez' contact information. (*Id.*, ¶¶24-26; Exhibit 7, letter 12-31-2008; Exhibit 3, Medina's depo.).

Dr. Pita's letter as to plaintiff's diagnosis stated she received a Gamma Knife procedure and her residual condition was having problems with multitasking and shifting from one task to another. Dr. Pita recommended reasonable accommodation in that she could perform one or two specific tasks during her shift. (*Id.*, ¶¶27, Exhibit 6, Dr. Pita's letter).

Neither Dr. Zayas nor anyone else at the hospital met with plaintiff to discuss the contents of the letters issued by her physicians, Dr. Pita and Dr. Rodríguez. The employer never engaged in conversation or the interactive process with Miranda-Fernández to identify the limitations resulting from the disability and the reasonable accommodation as to those limitations. Thus, defendants never engaged in a informal, interactive process to determine a reasonable accommodation or asked plaintiff what sort of reasonable accommodation she was requesting. (Docket No. 112-1, ¶¶30-31; Exhibit 2, Dr. Zayas' depo.; Exhibit 4, Rivera's depo., Exhibit 3, Medina's depo.).

On March 9, 2009, plaintiff Miranda-Fernández received a letter signed by defendant Carmen Rivera informing that, effective that date, she was to report to vital signs

as part of a program for reducing operational costs and/or reorganizations.  (*Id.*, ¶35; Exhibit 8, letter 3-6-2009).  Defendants never told plaintiff she was being transferred to vital signs as a reasonable accommodation.  Co-defendants Dr. Zayas, Rivera and Medina agreed to place plaintiff in the vital signs area on the third floor. (*Id.*, ¶¶35-37; Exhibit 4. Rivera's depo.).  Plaintiff Miranda-Fernández' physicians never requested plaintiff be transferred to vital signs and never asked plaintiff if the transfer from the PAP Clinic to vital signs satisfied her request for reasonable accommodation.  (*Id.*, ¶¶ 38-40; Exhibits 3, 4 and 2).

Plaintiff did not want to work at vital signs but had no other choice than to go to the work area where she was assigned to work.  (Docket No. 112-1, ¶¶ 41-42; Exhibits 4, 2). After the transfer, plaintiff Miranda-Fernández continued to request to be reasonably accommodated.  (*Id.*, ¶43; Exhibits 4, 3).  Plaintiff requested on numerous occasions to be transferred to phlebotomy where she had worked before.  (*Id.*, ¶44).

Plaintiff Miranda-Fernández was capable of performing the duties of phlebotomist and by 2009 there were two nurses assigned therein, including one Marisol Avila who was hired during the year 2009.  Plaintiff felt uneasy working outside the PAP Clinic for at the vital signs area she had to multitask, attend a workload of patients at the same time at a loud and fast paced environment, all of which were contrary to the physician's indication as to accommodation.  (*Id.*, ¶¶46-51; Exhibit 9, Miranda-Fernández' depo.; Exhibit 4, Rivera's depo. ).

Defendants never met with plaintiff Miranda-Fernández to engage in the interactive process to discuss above requested reasonable accommodation.  (*Id.*, ¶53).  Defendants do

not know what an interactive process is. (*Id.*, ¶54; Exhibit 2, Dr. Zayas' depo., pp. 103-104). Defendants acknowledge having mentioned to plaintiff short-term and long-term disability possibilities or to go to the SIF. (*Id.*).

Plaintiff also submits that during her employment defendants never complained about her work performance and understood she always did a good job. (Docket No. 112-1, ¶¶55-56; Exhibit 2, Dr. Zayas' depo.; Exhibit 4, Carmen Rivera's depo.).

Dr. Zayas stated that plaintiff's performance changed after February 2009, after receipt of the letters requesting reasonable accommodation and a letter from Rivera as to alleged tardiness and medication plaintiff was taking. (*Id.*, ¶57; Exhibit 2, Zayas' depo.; Exhibit 10, letter 2-26-2009). Around February 22-23, 2009, Dr. Zayas informed plaintiff, without any comment from plaintiff as to inability to work, that if her condition affected her work, she could leave and get short-term or long-term disability. (*Id.*, ¶58; Exhibit 2). A few days after, plaintiff's supervisor, Carmen Rivera, advised plaintiff that she could report to the State Insurance Fund. (*Id.*, ¶59; Exhibit 2; Exhibit 10).

Dr. Zayas, as the employer decision maker, considered that plaintiff did not perform adequately after January 2009 because of what was stated in the physicians' accommodation letters and considered the doctors wanted plaintiff to do simple duties, one or two at best. Dr. Zayas considered plaintiff could not perform multiple tasks without posing a threat to the patients at least since September 4, 2008. Plaintiff was considered to pose a threat to her own health. (*Id.*, ¶¶63-65; Exhibit 2, Dr. Zayas' depo.; Exhibit 4, Carmen Rivera's depo.). Dr. Zayas does not know the definition or the implications of simple duties; she understood Dr. Pita's request for accommodation in that plaintiff's

condition substantially limited her work in the areas of phlebotomy, pediatrics and emergency room. (*Id.*, ¶67). Dr. Zayas considered Dr. Pita's request for accommodation implied her condition substantially limited her at work and plaintiff's attitude with other employees after February 2009 was due to her clinical condition. (*Id.*, ¶68-69).

### B. Defendants' Opposition.

Defendants' opposition to partial summary judgment refers to the diagnosed condition and the letter sent by plaintiff's physicians as to plaintiff's condition resulted in the employers' decision that she had to be assigned to another position where she would perform the most basic duties of an assistant nurse, which for the employer was at the Adults' Outpatient Clinic taking vital signs. Defendants do not contest having failed to engage in the interactive process to evaluate and assess with plaintiff a reasonable accommodation. Defendants rely on their assumption there was no other option available. Defendants also submit that Dr. Zayas determined that "to minimize mistakes" a statement from plaintiff's physician letter indicated plaintiff could not perform multitasking and, thus, was a threat to patients' health. (Docket Nos. 130 and 130-1).[10]

Plaintiff also submitted a reply to above defendants' opposition to partial summary judgment. (Docket No. 141). Although previously asserted by plaintiff, the testimonies which defendants now attempt to introduce to substantiate the need to transfer plaintiff to the vital signs because she presented a threat to patients were given subsequent to the employment action of March 2009, that is, after April 22, 2009. It was at such later time

---

[10] Plaintiff subsequently filed a reply to defendants' opposition to their Motion for Partial Summary Judgment, mainly objecting to defendants' failure to submit evidence to controvert plaintiff's statement. (Docket No. 141, p. 5). A sur-reply was then filed. (Docket No. 144).

when plaintiff Miranda-Fernández sought disability benefits with the Social Security Administration and the SIF.  Except for the employer's misconception of plaintiff's condition, disability and limitations, and consequential discriminatory employment acts, there is no evidence to support defendants' reasoning behind the transfer to vital signs or the failure to undergo interactive process to avail themselves of information that could accommodate plaintiff's condition.  There is no substance to defendants' employment actions except for their own subjective interpretation that, having requested accommodation while at the PAP Clinic, plaintiff Miranda-Fernández was no longer able to perform her work for she could make mistakes.

## LEGAL DISCUSSION

### I.  Plaintiff's Partial Summary Judgment.

Insofar as claims of plaintiff Miranda-Fernández and defendants' lack of opposition as to the interactive process never being attempted in violation of ADA and/or Rehabilitation Act to reach compliance with reasonable accommodation, there are no relevant issues of disputed facts in controversy that would preclude said partial summary judgment.

An employer aware of an employee's disability and upon receipt of a request for reasonable accommodation is to present evidence showing the accommodation would result in hardship, financial or otherwise.  Its refusal to participate in an informal interactive process to determine an appropriate accommodation for a qualified individual may itself constitute evidence of a violation of ADA and the Rehabilitation Act.  *See* Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6 (1st Cir. 2004).

Dr. María Margarida's report of 2008 refers to Miranda-Fernández having expressive vocabulary and formulation of sentences as adequate.   There were adequate levels of attention and concentration.   Despite well preserved crystallized functions associated to verbal comprehension and expression, vocabulary and verbal abstractions, the slowness in her mental processing could interfere with her ability to communicate her ideas, as well as to remember or maintain in her mind the information that she wishes to communicate or learn for a limited time in her memory.   She would benefit, however, from additional time to consolidate the information in memory. Recovery and storage was facilitated by the presentation of information in a contextual manner, simplified and with visual or auditory aids of multiple selection for recognition.   (Docket No. 113-5, Deft's Exhibit 3).

Dr. Margarida's above report was assessed by Dr. Garayalde, whose deposition testimony was submitted by defendants in support of their own summary judgment request.   Besides defendants' submissions, Dr. Garayalde also indicated that, had plaintiff Miranda-Fernández been given the reasonable accommodation indicated in Dr. Margarida's report, she could have been able to continue performing her work at the PAP Clinic. (Docket No. 113- 28; Exhibit 26).[11]   Dr. Margarida's recommendation was simple enough, to wit, provide plaintiff with frequent rest times and vacations after periods of intense work;

---

[11]   Defendants indicate they did not receive Dr. Margarida's report prior to the date when discovery and examination by their expert Dr. Garayalde, examined same. (Docket No. 113-1, deft's uncontested ¶30; Docket No. 127-1 ¶30, plaintiff's opposition, Exhibit B, Dr. Zayas' depo.).

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 25

simplification of the routine and work; labor support during complex projects with time limits; provision of a work schedule that does not exceed 7 hours; and reducing complex projects with time limits.

It is clear that plaintiff, an individual with disability and as such regarded by the employer, complied with making a proper request for accommodation.  Enica v. Principi, 544 F.3d 328 (1st Cir. 2008); *see also* McDonough v. Donahoe, 673 F.3d 41, 48 (1st Cir. 2012) (the determination of disability is made on a case-by-case basis).

It is further uncontested defendants,  regardless of their general opposition, failed to debate as contested, the absence of any interactive process with the plaintiff, that any communication on the matter was even attempted with plaintiff, and that doing so would have caused defendants undue hardship.[12]   An employer is expected to engage in a meaningful dialogue with the employee to find the best means of accommodating the disability.  *See* Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 108 (1st Cir. 2005).

Hence, having established no controversy as to genuine issues of material facts on plaintiff Miranda-Fernández' request for partial summary judgment insofar that Miranda-

---

[12]  42 U.S.C.A. §12112 relevant part provides:

(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity;

Fernández is a qualified individual[13] with disability and the employer did not engage in the interactive process to properly attend a requests for reasonable accommodation, plaintiff's partial motion for summary judgment is GRANTED.

## II.  Defendants' Summary Judgment.

### A.      Discrimination.

Regardless of a lack of attempt to engage in the required interactive process to assist in the accommodation requested, there are disputed issues of material fact as to defendants' request for summary judgment in that defendants aver having taken steps to fulfill reasonable accommodation by providing plaintiff Miranda-Fernández a transfer to the vital signs area.   Defendants' accommodation effort, as now prompted, was one made unilaterally upon deciding to transfer plaintiff Miranda-Fernández to another area wherein they considered work tasks were simpler in accordance with her disability.   Such transfer was opposed by plaintiff Miranda-Fernández as being in total disregard of any additional consideration that work in the vital signs, to wit; its environment, the routine required or precisely its non-existent routine, the time limits to conduct tasks, the continuous change in shift and pace, among others, would not only defeat the contention of reasonable accommodation, but resulted in detriment of plaintiff's disabling condition.   Plaintiff Miranda-Fernández also referred to lack of reasonable accommodation subsequent to the imposed transfer to vital signs, when shortly or almost immediate to same she tried to obtain from Dr. Zayas an opportunity to be instead relocated to the phlebotomy area, work

---

[13]   Under ADA a disability is defined as (a) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (b) a record of such impairment; or (c) being regarded as having such an impairment.  42 U.S.C. §12102.

that she had previously performed.[14] This other request for accommodation to phlebotomy was ignored by defendants and is now claimed the position was unavailable.

Still, there are disputed facts as to whether the transfer to vital signs was the only option available. Plaintiff has opposed by submitting not only there was recruitment of a nurse at the phlebotomy area she had requested, which defendants argue transpired subsequent to the initial transfer, but also defendants' submissions should be considered *post-hoc* rationalizations that were never either presented at the time nor available to defendants at the time the employment action was undertaken.[15] As such, plaintiff Miranda-Fernández has raised contested issues as to defendants' reason being but pretext for the employment actions by showing weaknesses, implausibilities, inconsistencies or contradictions to the proffered reasons by defendants. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 456, (1st Cir. 2000). Additionally, courts should exercise particular caution before granting summary judgment for defendants as to discrimination on the presence of issues such as pretext, motive and intent. Hodgens v. General Dynamics Corp., 144 F.3d 151, 167-68 (1st Cir. 1998); Mariani Giron v. Acevedo Ruiz, 834 F.2d 106, 113 (1st Cir. 1979).

Furthermore, to survive summary judgment plaintiff is not required to rely only on uncontradicted evidence for as long as plaintiff's evidence is both cognizable and sufficiently

---

[14] After transfer to vital signs, plaintiff requested on numerous occasions to be transferred to phlebotomy where she had worked before. (Docket No. 112-1, ¶¶43-44).

[15] Plaintiff submits that in addition to never having the opportunity to discuss the requested accommodation with defendants, on March 2009 she received a letter stating that effective March 9, 2009 she was to report to vital signs as part of a program for reducing operational costs and/or reorganization. (Docket No. 112-1 ¶¶ 30-35, 40-42).

strong to support a verdict in her favor, the fact finder must be allowed to determine which version of the facts is most compelling.  Sensing v. Outback Steakhouse of Florida, LLC, 575 F.3d 145, 153 (1st Cir. 2009) (citing to Calero-Cerezo, 355 F.3d at 19).

**B.    Hostile Work Environment**.

Defendants' request for summary adjudication of plaintiff's claims of hostile work environment rests on, while not negating the events described by plaintiff Miranda-Fernández as to comments, ridicule and her reaction to the same, these events not being pervasive or severe enough to warrant relief as a hostile work environment.   To establish hostile work environment, an employee must show that his workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter conditions of his employment and create abusive working environment.

Plaintiff Miranda-Fernández developed, in addition to her AVM neurological condition for which she requested accommodation, a mental condition which was heightened by the discrimination she perceived and caused her to suffer panic attacks and crying spells.  The issue of whether employee afflicted by severe depression had been subjected by his superiors to adverse employment action in the form of hostile work environment, is for the jury. Quiles-Quiles v. Henderson, 439 F.3d 1 (1st Cir. 2006).  There is no mathematical formula to determine whether a work environment is hostile or abusive, but it is to be determined by looking at all the circumstances.[16]  *See* Aponte-Rivera v. DHL

---

[16]    Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15 (1st Cir. 2001) (when assessing hostile environment, courts look to the totality of the circumstances).

Solutions (USA), Inc., 650 F.3d 803 (1st Cir. 2011).[17]  It must be also considered that within

a hostile work environment analysis, the Court of Appeals for the First Circuit has hinted

that following Quiles-Quiles disability harassment is also a viable theory for recovery.

McDonough v. Donahoe, 673 F.3d 41 (1st Cir. 2012).

### C.     Single Employer Doctrine.

Defendants also request dismissal of all claims as to San Pablo Physician Group in

that, since October 2000, plaintiff Miranda-Fernández did not render services to same nor

has said entity participated in any decision regarding plaintiff's employment with Grupo

Medico San Pablo. (Docket No. 113-1, ¶54).  Miranda-Fernández raised the single employer

doctrine on defendant's request for dismissal as to co-defendant San Pablo Physician

Group.  Plaintiff submits she performed work for both Grupo Medico San Pablo and San

Pablo Physician Group and having documents received from her payroll and work

experience to support this contention.  Defendants have admitted plaintiff's statement

although arguing it still fails to establish plaintiff was an employee as to both.

Plaintiff Miranda-Fernández submits the employment contract that was initially

executed with Grupo Medico San Pablo[18] shows co-defendant Dr. Zayas was the Medical

Director and responsible to supervise.  Dr. Zayas is also the Chief Medical Officer at the

CDT, where plaintiff Miranda-Fernández worked in its Emergency Room.  She also

---

[17]   The conduct actionable as hostile work environment is assessed under a middle path between making actionable any conduct that is merely offensive and conduct requiring to cause a tangible psychological injury.  It creates an objectively hostile work environment, as well as be subjectively perceived by a plaintiff as a hostile or abusive environment. Aponte-Rivera, 650 F.3d at 808 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23, 114 S.Ct. 367 (1993).

[18]   Professional services contract between Grupo Medico San Pablo, represented by Dr. Zayas as Medical Director, and plaintiff Miranda-Fernández from 10/2/2000 through 1/2/2001.  (Docket Nos. 113-20).

Angela Miranda-Fernández, et al. v. Grupo Medico San Pablo, et al.
Civil No. 09-1966 (CVR)
Opinion and Order
Page No. 30

performed work at the PAP Clinic that was also developed by Dr. Zayas, as was the Family
Planning through contract with the Medical Sciences School. (Docket No. 112-3, Dr. Zayas'
depo.). Co-defendant Vania Medina also worked at the different related business of the
Medical Group, CDT and Grupo Medico San Pablo, as accountant and administrator.
(Docket No. 112-4, Medina's depo.). Documentation as to the EEOC charge filed by
plaintiff refers that since 2000 Miranda-Fernández had worked under three different
employer's name but all pertains to the same company. (Docket Nos. 113-116).

On the other hand, in opposition to plaintiff's averment as to also having worked for
co-defendants San Pablo Physician Group and Grupo Medico San Pablo, defendants submit
a sworn statement by Dr. Toro-Grajales that since October 1, 2000, plaintiff did not render
services to said co-defendant San Pablo Physician Group. (Docket No. 113-31). As such,
there is a genuine issue of material fact in controversy regarding plaintiff Miranda-
Fernández' employer who may be liable under ADA and Rehabilitation Acts claims.

Additionally, there is no formalistic application of the single employer doctrine for
it requires examination of the relationship between the entities, the continuity of the
ownership between the corporations, management overlap, similarity of business purpose,
among others. Likewise as to the *alter ego* doctrine. The latter is developed under
equitable considerations to avoid that a claimant be prevented to receive what is otherwise
due and owing from the person or persons who have created a shield. Massachusetts
Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc., 343 F.3d 18, 22-23 (1st Cir.
2003); *see* InterGen N.V. v. Grina, 344 F.3d 134, 149 (1st Cir. 2003).

Because of equitable considerations and the public interest that ADA and the Rehabilitation Act present and having before this Court a commingling of entities, ownership, similar purpose and overlapping of services, with considerable contested issues or at times insufficient support for defendant's proposition to dismiss the claim as to the co-defendant, the request for dismissal as to San Pablo Physician Group is DENIED.

Such being the case as to the presence of genuine issues of material fact in controversy, defendants' motion for summary judgment is DENIED. (Docket No. 113).

## CONCLUSION

In view of the foregoing, plaintiff Miranda-Fernández' partial summary judgment is GRANTED (Docket No. 112) and defendants' request for summary judgment is DENIED. (Docket No. 113).

IT IS SO ORDERED.

San Juan, Puerto Rico, this 17th day of December of 2012.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE